RANDY L. ROHRBAUGH,

                Petitioner,          **Civil Action No. 2:09cv39**
                                    **Criminal Action No. 2:06cr19**
**v.**                                 **(Judge Bailey)**

UNITED STATES OF AMERICA,

                Respondent.

## REPORT AND RECOMMENDATION

### I. Introduction

On March 30, 2009, Petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody with a Memorandum in Support. (Dkt.# 107 and 109). On March 31, 2009 the Government was directed to respond. (Dkt.# 113).[1] On June 30, 2009, the Government filed its response (Dkt.# 125) along with a Motion to Dismiss. (Dkt.# 124). Instead of a reply or response to the motion to dismiss, on July 15, 2009, petitioner filed a Motion for Sanctions,[2] alleging the Government's failure to file a response, along with a Motion for Leave to Amend his § 2255 motion (Dkt.# 129).[3] On July 21, 2009 petitioner finally filed his reply, titled Petitioner's Respnse [sic] to the Governments [sic] Answer to the 2255 Petition (Dkt.# 131), as well as a Response to the United State [sic] Motion to Dismiss 2255 Petition and Request for Leave to

---

[1] On April 30, 2009 the Government requested an extension of time in which to file its response (Dkt.# 119), which was granted by Order entered on May 8, 2009. (Dkt.# 120).

[2] Petitioner's motion for sanctions was titled as Petitioner's Objection to the Government's Failure to Comply with Court Order and Request for Sanctions. Apparently, on July 7, 2009, petitioner sent a letter to the Clerk (2:09cv39, Dkt.# 2) requesting a copy of his docket sheet. His letter showed a new return address without specifically identifying it as such. The letter was received and filed in his civil docket on July 10, 2010. The Clerk noticed the new address and updated petitioner's address on his criminal docket the same day. Because of the delay engendered by petitioner's failure to notify the Court of his change of address, the Government's June 30, 2010 response and motion to dismiss were sent to petitioner's old address. Petitioner apparently assumed the Government had not timely responded and filed the motion for sanctions.

[3] Petitioner's July 15, 2009 motion for leave to amend his § 2255 petition was granted by Order entered on November 10, 2009. (Dkt.# 137). In that same Order, petitioner's subsequent July 21, 2009 and July 27, 2009 requests for leave to amend (Dkt.# 132) and a duplicate copy of the same (Dkt.# 134), were denied as moot, as was his July 15, 2009 Objection to the Government's Failure to Comply with Court Order and Request for Sanctions. (Dkt.# 126).

Amend § 2255 Petition (Dkt.# 132).[4]

Thereafter, on December 7, 2009, petitioner filed an amended Motion to Vacate Under 28 U.S.C. § 2255 (Dkt.# 146) along with a Memorandum in Support (Dkt.# 146-1). The Government filed its Response in Opposition on December 14, 2009 (Dkt.# 147). On December 21, 2009, petitioner replied to the Government in his Petitioners [sic] Response to the Governments [sic] Answer to Amended 2255 Petition. (Dkt.# 148).

On January 6, 2010, petitioner filed a Motion for Leave to Supplement Amended Motion to Vacate (Dkt.# 149) along with an attached Supplemental Motion to Vacate. (Dkt.# 149-1), which was granted by Order entered on January 13, 2010 (Dkt.# 150) and the attached Supplemental Motion to Vacate" was deemed to be the Second Amended Motion to Vacate, already filed.[5]

On January 27, 2010, the Government filed its Response in Opposition (Dkt.# 127) and on February 4, 2010, petitioner replied. (Dkt.# 153).

On August 25, 2010, the Government was directed to file a supplemental response to more fully address some of petitioner's § 2255 claims (Dkt.# 155) and did so on September 10, 2010. (Dkt.# 159). Petitioner replied on November 1, 2010.[6] (Dkt# 166).

On November 8, 2010, despite having been previously advised by the Court that no further amendments or supplements to his petition would be granted, petitioner filed a Motion to Supplement. (Dkt.# 167).

## II. **Facts**

---

[4] On July 27, 2009, without explanation, petitioner also filed a duplicate copies of his original Petitioner's Respnse [sic] to the Governments [sic] Answer to the 2255 Petition (also containing a motion for leave to amend) (Dkt.# 134) and his Petitioner's Response to the United State [sic] Motion to Dismiss 2255 Petition and Request for Leave to Amend § 2255 Petition (Dkt.# 135).

[5] The attachment to the Motion for Leave to Supplement Amended Motion to Vacate, titled Supplemental Motion to Vacate, was deemed the petitioner's Second Amended Motion to Vacate because it set forth an additional ineffective assistance of counsel claim. Petitioner was advised by the Court that no further amendments or supplements would be granted to his § 2255 motion.

[6] Petitioner's reply to the Government's supplemental response was untimely because the Government's response went to his previous address. (Dkt.# 166 at 2). After petitioner's October 12, 2010 notice to the magistrate judge (Dkt.# 162) advised that he had not received it, a copy was re-sent.

## A. Conviction and Sentence

On July 13, 2006, petitioner signed a plea agreement in which he agreed to waive his right to have his case presented to a Grand Jury, and instead, plead guilty to a one count Information with a forfeiture allegation: Count 1, conspiracy to possess with intent to distribute and to distribute more than five hundred grams of substances containing methamphetamine, in violation of Title 21, U.S.C. Sections 846 and 841(b)(1)(A). In the agreement, petitioner also waived his right to an appeal and to collaterally attack his sentence. Specifically, the petitioner's plea agreement contained the following language regarding his waiver:

> 17. The defendant waives the right to appeal or collaterally any sentence, or the manner in which it was determined, on any ground whatever, if the sentence is within the maximum provided in the statute of conviction. This includes any ground set forth in 18 U.S.C. Section 3742 (Review of Sentence) and 28 U.S.C. 2255 (habeas corpus). The United States makes the same waiver. In the event of an appeal, each party reserves the right to argue in support of the sentence.

(Dkt.# 6 at 7).

On July 13, 2006, petitioner, then aged 28 and a high school graduate, entered his plea in open court. (Dkt.# 121 at 8). Petitioner testified that: his employment experience was limited to laborer's work; he had not had any medication, drugs or alcohol within the previous 24 hours; he could read, write and understand the English language; and he had no hearing or other impairment preventing him from fully participating in the hearing. (Id.). Petitioner waived his right to prosecution by indictment and consented to proceeding by Information. (Id. at 10).

During the plea hearing, the Assistant U.S. Attorney ("AUSA") read aloud in open court each paragraph of the plea agreement, including the paragraph 17 *supra*. (Id. at 17 - 23). The Court then asked petitioner whether he understood and agreed to the terms of the plea agreement and petitioner said that he did. (Id. at 25). The Court specifically asked petitioner if he understood the waiver of his appellate relief rights but did not ask petitioner about the waiver of his post-conviction relief rights. (Id. at 30 - 31). The Court then asked petitioner's counsel if he felt that his client understood the waiver

3

of his appellate rights but did not ask petitioner's counsel about the waiver of post-conviction relief rights. (Id. at 30). The Court then reviewed all the rights petitioner was giving up by pleading guilty. (Id. at 25 - 26). The Court asked petitioner if he understood the consequences of a plea of guilty and petitioner agreed that he did. (Id at 26). The Court then inquired of counsel whether he believed petitioner understood the consequences of a guilty plea and counsel said that he did. (Id.). Further, the Court inquired of counsel whether he had "had a chance to go over all of this with Mr. Rohrbaugh?" Counsel said that he had. (Id.). Petitioner advised the Court that he was guilty of Count 1 of the indictment. (Id. at 32). During the plea hearing, the Government presented the testimony of Christopher Michael Snodgrass, an undercover investigator with the West Virginia State Police Bureau of Criminal Investigation, to establish a factual basis for the plea. (Id. at 34 - 38). The petitioner did not contest the factual basis of the plea.

Petitioner then stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id. at 39). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id.). He denied that anyone had promised or predicted the exact sentence he would receive. (Id. at 39 - 40). Petitioner testified that his attorney had adequately represented him, and that his attorney had left nothing undone. (Id. at 40). He testified that neither he nor his attorney had found any defense to the charges contained in the Information. (Id.).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, that petitioner understood the consequences of pleading guilty, and that there was a factual basis for the tendered plea of guilty to the Information. (Id.). Petitioner did not object to the Court's finding.

On April 24, 2008, a sentencing hearing was held in which petitioner was sentenced to 220

months imprisonment. (Dkt.# 122 at 14 and 19). Petitioner was found to have a total offense level of 34 and a criminal history of III; the applicable sentencing guideline range was determined to be 188 - 235 months. (Id. at 9). Despite the Government's refusal to make a motion for downward departure for substantial assistance, defense counsel presented nine objections to the PSR, arguing, *inter alia,*[7] that petitioner deserved a three-level downward departure for acceptance of responsibility and consideration of the substantial assistance provided in determining his sentence. (Id. at 10 - 13). However, the Court declined to find that petitioner had accepted responsibility. Furthermore, it noted that instead of sentencing petitioner to the upper end of the guideline range as it was inclined to do because of petitioner's serious misconduct while out on post-plea bond,[8] it would impose the 220 month-sentence, in the upper-middle of the guideline range, in recognition of petitioner's making over 100 drug buys for the Government. (Id. at 14 - 15). Petitioner did not object to these findings. Counsel asked that petitioner receive credit for his post-conviction home confinement time on supervised release. At the conclusion of the hearing, when the Court explained his appellate rights, petitioner did not avail himself of the opportunity offered by the Court to have the Clerk and/or his attorney file a notice of appeal on his behalf. (Id. at 18).

**B.** <u>**Direct Appeal**</u>

---

[7] Petitioner's nine objections to the PSR were: 1) Nothing from the July 20, 2005 execution of a state court search warrant should be utilized herein or considered in sentencing; 2) whether a §2D1.1(b)(1) 2-level firearm enhancement should be applied; 3) whether petitioner had accepted responsibility; 4) whether petitioner's planting of methamphetamine and other acts of dishonesty should negatively impact his amazingly productive substantial assistance; 5) no evidence or allegations from the July 20, 2005 should be utilized in determining petitioner's sentence 6) petitioner's offense level should be 34, with no increase for Hunter's and/or McCall's possession of firearms; 7) petitioner earned the 3-level downward departure for timely acceptance of responsibility; 8) petitioner's offense level should be 34, with no increase for Hunter's and/or McCall's possession of firearms; and 9) no evidence from the July 20, 2005 search should be utilized in determining petitioner's sentence.

[8] The Court specifically referred to petitioner's planting drugs on two individuals in hopes of gaining favor with the Government and evading a substantial drug debt; a domestic incident; petitioner's continued drug use and an elaborate scheme he devised to circumvent the drug screening process; and his attempt to knowingly sell forfeited property out from under the Government.

Petitioner did not pursue a direct appeal.

## C.    **Federal Habeas Corpus**

**Petitioner's Contentions (Dkt.# 107 and 109)**

Petitioner's petition can be condensed into six grounds for relief:

1) counsel was ineffective:

> a)  for not doing more to secure a better plea agreement;

> b) at sentencing, for failing to protect his rights regarding the plea agreement, by arguing for downward departures and challenging drug amounts; and

> c) for failing to file an appeal on his behalf;

2) the Government breached the plea agreement by not making certain sentencing recommendations, including downward departures for acceptance of responsibility and for substantial assistance, as set forth in the plea agreement;

3) petitioner was improperly assessed extra criminal history points;

5) the drug weight stipulations in the plea agreement were incorrect; and

6) the District Court violated Fed. Crim. Pro. Rule 32 at petitioner's sentencing hearing.

As relief, petitioner requests a two-level reduction for acceptance of responsibility; another one-level reduction for timely acceptance of the plea agreement; a reduction of his criminal history category; "and/or at least [a] three level reduction for all of movant's hard work and substantial assistance[.] Whatever court [sic] deems just[.]" (Dkt.#107 at 5).

**Government's Response (Dkt.# 125)**

The Government contends that petitioner waived his right to file a collateral attack and his § 2255 motion should be dismissed on that ground.

Further, the Government responds that:

1) Petitioner's claim of dissatisfaction with counsel's performance is inconsistent with the statements petitioner made under oath at his plea hearing, with statements made by defense counsel at the plea hearing, and with the terms of the plea agreement.

2) The Government never promised to move for a 5K Guideline downward departure in the plea agreement, it only agreed to permit petitioner to have the opportunity to earn that sentencing relief. Petitioner's own misconduct in breaching the conditions of the plea agreement while on post-plea bond earned him the loss of those sentencing reduction recommendations.

3) Petitioner's criminal history category III was based on 6 criminal history points. Even if the disputed single criminal history point were removed, petitioner would still fall within Category III, because Category III encompasses a range of 4 - 6 criminal history points. Accordingly, even if this claim is true, the inclusion of the extra point was harmless.

4) The drug weight stipulation in the plea agreement was clearly supported by the record.

5) Petitioner's claim that he was deprived of a reasonable opportunity to respond to the Government's Supplemental Sentencing Memorandum is without merit.

6) Petitioner's claim that the Court did not advise him of his appellate rights lacks merit; petitioner's waiver of his appellate rights was discussed with him by the Court during his Rule 11 colloquy.

7) Finally, regarding petitioner's claim that he was not afforded an opportunity for allocution at his sentencing hearing, while the Fourth Circuit Court of Appeals has held this to be plain error, but with no *per se* rule of reversal, the U.S. Supreme Court has held that the mere failure to strictly apply the rule of allocution is not subject to attack in a habeas review. Further, the Fourth Circuit has held that as long as there are no unusual circumstances (such as the judge being unaware of the facts of the case), then a complete failure to permit allocution is not subject to habeas review. Here, the same District Judge who presided over the sentencing hearing presided over the plea hearing, had the entire record before him and was well aware of the facts of the case.

### Petitioner's Reply to USA's Response (Dkt.# 135)

1) Petitioner states he only said he was satisfied with his attorney at the plea hearing because up to that point, he assumed his attorney was doing everything right and he was satisfied; all of his complaints with his attorney's performance came after the plea hearing.

2) Petitioner would not have worked so hard to provide substantial assistance, putting himself and others in danger, had he known he would not get credit. Further, it was unfair of the government to penalize him for having his mother sell the forfeited property "Old Mallow Farm."

3) Counsel was ineffective for failing to argue the plain error that occurred when his criminal history was enhanced for the erroneous drug weight, the extra criminal point for the case that had no case number, and two points were added for being on probation at the time of his conviction for the present offense. Petitioner states that the prior conviction that had no case number was expunged from his record and thus he should not have been penalized for it.

4) Petitioner contends that despite the Government's position that it served defense counsel with

a copy of its Supplemental Sentencing Memorandum on October 31, 2007, the Supplemental Sentencing Memorandum was not filed with the court until April 24, 2008, the day of sentencing. Further, he alleges, his attorney never showed it to him or discussed it with him prior to the sentencing hearing; he attaches an affidavit attesting to this.

5) Petitioner contends that he was, in fact, *orally promised* a downward departure for substantial assistance during the plea hearing, and that even though it was not "written on the plea agreement," "docket 121 [the plea hearing transcript]" will support his claim. Petitioner states "a deal is a deal," the Government breached the plea agreement by not making the motion, and the promise should be enforced.

6) Petitioner argues that he only used the "wizzonator" [sic] one time while out on bond, not to systematically attempt to cheat in drug tests over time, as the Government contends, but because he was a desperate recovering addict having to continue working in a drug environment to earn substantial assistance.

7) Petitioner argues that the downward departure should be awarded regardless of his misconduct in selling the forfeited farm property, because substantial assistance is "directed toward the investigation and prosecution of persons other than the defendant," while acceptance of responsibility is directed toward the defendant's affirmative recognition of responsibility for his own conduct. Further, petitioner accuses his mother of keeping the money from the farm's sale, instead of paying the money toward his fine before sentencing; he contends that he should not be blamed for his mother's actions. "If given the opportunity to speak at sentencing defendant would have forfieted [sic] another property of equall [sic] or greater value or money equal to the Farm [sic] property." Petitioner also offers various reasons the other remaining forfeited properties were disposed of prior to sentencing.

8) Petitioner compares the Government's broken oral promise to move for downward departure for substantial assistance, and his own broken oral promise at the plea agreement not to use drugs while on bond to provide substantial assistance, saying "its ok [sic] for the prosecution to break an oral agreement but not the defendant." [sic].

9) Petitioner argues that the drug weight stipulation was incorrect and his sentence was wrongfully enhanced as a result, causing a "fonamental [sic] and immutable" violation of his constitutional rights.

10) Petitioner reiterates his claim that the District Court committed a Fed. Crim. Pro. Rule 32 violation by not permitting him to allocute at sentencing in order to respond to the Government's Supplemental Sentencing Memorandum allegations regarding his disposing of property he had agreed to forfeit. Petitioner contends that had he been permitted to speak, he could have explained that his mother kept his money from the farm property sale, and he could have made things right by forfeiting another piece of property, and that this would have "made a big difference in the sentence."

Petitioner asks the court to recognize that he was unconstitutionally and improperly sentenced

and deprived of the right to allocute at sentencing.

## Petitioner's First Amended § 2255 Petition Contentions (Dkt.# 146 and 146-1)

Petitioner's Amended § 2255 motion is almost a virtual copy of his first, with one new claim and some additional argument to his previous claims:

1) The District Court failed to cite to Title 18, U.S.C. § 3553(a) at his sentencing hearing;

2) Petitioner reiterates generally that at sentencing, counsel was ineffective for failing to protect his rights with regards to the plea agreement and the downward departure for substantial assistance;

3) Petitioner provides more detail regarding the substantial assistance he provided, in support of his original § 2255 motion claim that the Government breached the plea agreement; and

4) petitioner attaches a copy of a June 1, 2006 letter from the AUSA to defense counsel discussing a draft of a plea agreement and discussion of, *inter alia,* the motion for downward departure for substantial assistance.

## Government's Response to Petitioner's First Amended § 2255 Petition (Dkt.# 147)

The Government contends that petitioner's amended § 2255 motion is nearly identical to his original motion, except for semantics, excluding one new claim, a false allegation that the District Court failed to discuss Title 18, U.S.C. § 3553(a) at his sentencing hearing.

## Petitioner's First Amended § 2255 Petition Reply to USA's Response (Dkt.# 148)

Petitioner refutes the Government's contention that his allegation regarding the District Court's failure to discuss Title 18, U.S.C. § 3553(a) at his sentencing hearing was false, but says that without access to the transcript, "it is hard for the defendant to say exactly what parts of discuss 18 USCs [sic]. § 3553 were discussed, but the part were [sic] it is in the judges [sic] descression [sic] to go below the mandatory minimum based upon Substantial Assistance. And that the Manditory [sic] minimum is not manditory [sic] only advisory." Petitioner reiterates his claim that the Court should have taken his substantial assistance into consideration in imposing a sentence below the Guidelines.

## Petitioner's Second Amended § 2255 Petition Contentions (Dkt.# 149-1)

Petitioner presents a new allegation of ineffective assistance of counsel, in that counsel failed to advise him of an "alternate route" he could have taken, other than the plea agreement or proceeding to trial. Petitioner states that if only he had been informed by counsel that he could have entered an "open plea . . . which would have entitled him to a 3-level reduction for acceptance of responsibility," he would have done so. He alleges that counsel's failure to do so proves both the ineffectiveness and prejudice prongs under Strickland.[9]

---

[9] Strickland v. Washington, 466 U.S. 668 (1984) (establishing a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance).

### Government's Response to Petitioner's Second Amended § 2255 Petition (Dkt.# 152)

The Government avers that it does not understand petitioner's argument on how his loss of the acceptance of responsibility would have been affected by an "open plea," since petitioner lost his Guideline 3E1.1 acceptance of responsibility sentence level reduction because of his various forms of misconduct on bond, including in cheating on drug screens by using a "Whizzinator."

### Petitioner's Second Amended § 2255 Petition Reply to USA's Response (Dkt.# 153)

Petitioner reiterates his claim that counsel was ineffective for not advising him of the third option of an "open plea."

Further, petitioner denies that he used the Whizzinator to cheat on drug *screens* and states he only cheated on '*a*' drug screen. He contends that the only reason he was being drug screened in the first place was because he was out on pretrial release to provide substantial assistance, part of the plea agreement deal that he took. Had he remained in jail until sentencing "or not on anything" he would have gotten his three points for acceptance of responsibility; would not have provided the substantial assistance that exposed him and his family to harm from those whose criminal activity he revealed; would not have had to forfeit his property; and would not have been pressured into using drugs while working among other drug users for substantial assistance.

Petitioner claims for the first time that he was coerced into signing his plea agreement by the Government's advice that it was his only option beside trial, and its threat to prosecute the mothers of his children if he refused. He reattaches the same June 1, 2006 letter from the AUSA previously provided[10] to defense counsel in support of this. He reiterates his other many claims made in his prior § 2255 motions and amended motions and replies to the same.

He again requests that the Court take the substantial assistance he provided into account in re-sentencing him to the statutory mandatory minimum.

### Government's Supplemental Response (Dkt.# 159)

The Government's supplemental response merely reiterates its prior argument regarding petitioner's waiver of appellate rights in its motion to dismiss, requesting that the Court "incorporate that document into this response." (Dkt.# 159 at 1).

### Petitioner's Reply to the Government's Supplemental Response (Dkt.# 166)

Petitioner reiterates his previously-raised claims, provides additional citations to case law, and again claims that he is entitled to the two-level reduction for acceptance of responsibility and the additional level for timely acceptance. He specifically refutes the PSR's contention that he is not entitled to the timely acceptance reduction (i.e., because the initial crime occurred in November 2005 and he did not accept the plea until July, 2006), saying that he "was not informed he was being charged

---

[10] Petitioner originally attached the AUSA's June 1, 2006 letter to his First Amended § 2255 motion.

til a week before he signed the plea." (Dkt.# 166 at 1). He claims that "Attachment A,"[11] a "letter from prosecutor [sic] to cunsel [sic] will show this." (Id.).

**Petitioner's Motion to Supplement (Dkt.# 167)**

Petitioner, despite being previously forewarned by the Court that no further amendments or supplements to his motion would be permitted, filed yet another motion to supplement, attaching affidavits from several individuals in support of his claim on the issue of whether he requested that counsel file an appeal on his behalf.

## III.  Analysis

### A.  Burden of Proof

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack.  28 U.S.C. § 2255.  A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence."  Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

### B.  Waiver

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.  Properly administered, they can benefit all concerned."  Blackledge v. Allison, 431 U.S. 63, 71 (1977).  However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality."  Id.  "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea

---

[11] Presumably petitioner is referring to "Attachment A" to his first amended § 2255 motion, as it is the only "Attachment A" to any of petitioner's many filings in this case that is a letter from the prosecutor to defense counsel. This June 1, 2006 cover letter was apparently sent with a draft of the proposed plea agreement. The date that petitioner eventually signed the actual plea agreement was July 13, 2006, six weeks later.

agreement." <u>United States v. Lemaster</u>, 403 F.3d 216, 220 (4th Cir. 2005).

In <u>United States v. Attar</u>, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." <u>Id.</u> After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. <u>Id.</u> at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." <u>Id.</u> Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." <u>Id.</u>

Subsequently, in <u>Lemaster</u>, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. <u>Lemaster</u>, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. <u>Id.</u> And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." <u>Id.</u> at n. 2.

Based on these cases, it appears that ineffective assistance of counsel (IAC) claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant

entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope

of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right

to appeal his sentence on the ground that the proceedings following entry of the guilty plea were

conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive

appellate review of his sentence is implicitly conditioned on the assumption that the proceedings

following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is

a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid

waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and
> intelligently agreed to waive the right to appeal. Although this determination is often
> made based on adequacy of the plea colloquy -- specifically, whether the district court
> questioned the defendant about the appeal waiver – the issue ultimately is evaluated by
> reference to the totality of the circumstances. Thus, the determination must depend, in
> each case, upon the particular facts and circumstances surrounding that case, including
> the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a

whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court

finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the

waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea

agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the

proceedings following entry of the guilty plea – including both the sentencing hearing itself and the

presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth

Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea

agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction. Braxton, 358 F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have

confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

During the Rule 11 colloquy in the case at hand, the Court specifically inquired whether petitioner understood the waiver of his appellate rights contained in the plea agreement. (Dkt.# 121 at 30 - 31). This inquiry appropriately established that petitioner knowingly and voluntarily waived his right to appeal. Petitioner's written plea agreement also expressly provided that he waived the right to file a § 2255 collateral attack. However, in the Rule 11 colloquy, the Court did not expressly ask petitioner if petitioner understood that he was giving up the right to file a § 2255 collateral attack. Therefore, in accordance with the holding in United States v. Morris, 2007 WL 2710010 at *1-2 (4th Cir. 2007), which requires a Court to expressly inquire at the Rule 11 colloquy about the waiver of appellate rights, petitioner did not waive his right to file a § 2255 collateral attack. Therefore, as the preceding review of cases indicate, petitioner did not validly waive his right to file this instant petition and accordingly, it should be given full consideration. Accordingly, petitioner's claims will be given full review.[12]

**Ground One:[13] Whether the Government Breached the Plea agreement by Not Making Sentencing Recommendations as Set Forth in the Plea Agreement, Including Downward Departures for Acceptance of Responsibility and for Providing Substantial Assistance.**

Petitioner contends that at sentencing, the Government breached the plea agreement repeatedly, by:

a) not recommending a two-level 3E1.1 sentence reduction for acceptance of responsibility "as

---

[12] Although many of petitioner's grounds for this § 2255 motion could have been denied as procedurally barred because he failed to raise them on a direct appeal, petitioner is also raising an ineffective assistance of counsel allegation that counsel failed to file a notice of appeal on his behalf, after he requested that he do so.

[13] Petitioner's claims have been reordered here for clarity and ease of consideration.

agreed," or the additional one-level reduction for timely acceptance "as agreed;"

b) not recommending a sentence at the low end of the guideline "as agreed;"

c) failing to "take care of an incodent [sic] that accured [sic] on July 20, 2005 which is still held over movant's head by the state of WV;"

d) not taking care of an outstanding warrant in Polk Co., FL as it agreed to do;

e) by not filing the U.S.S.G § 5K1.1 motion for downward departure "as promised" for the substantial assistance he provided, and waited till the day of sentencing to announce this;

f) not providing protection to petitioner and his family as promised, by a name change or the witness protection program.

When a guilty plea rests in any significant degree on a promise or agreement of the prosecutor, so that it could be said to be part of the inducement or consideration, such promise must be fulfilled. United States v. Beltran-Ortiz, 91 F.3d 665, 668 (4th Cir. 1996). The validity of the plea is called into question if the prosecutor's promises are not carried out, because the plea is involuntary. Santobello v. New York, 404 U.S. 257 (1971). Though plea agreements are generally interpreted under the law of contracts, the constitutional basis of the defendant's "contract" right and concerns for the honor and integrity of the government require holding the government responsible for imprecisions or ambiguities in the agreement. U.S. v. Dixon, 998 F.2d 228, 231, 1993 U.S. App. LEXIS 16238 (1993) *quoting* United States v. Harvey, 791 F.2d 294, 300-301 (4th Cir. 1986). A party alleging breach has the burden of proving the breach by a preponderance of the evidence. United States v. Conner, 930 F. 2d 1073, 1076 (4th Cir.), cert. denied, 502 U.S. 958 (1991).

Here, despite petitioner's Ground One (a) claim, there was no *promise* in the plea agreement of a two-level 3E1.1 sentence reduction for acceptance of responsibility or an additional one-level reduction for timely acceptance of the plea.

Nor was there an unconditional *promise* in the plea agreement, as petitioner's Ground One (b)

claim alleges, of a *promise* to make a recommendation of a sentence at the lowest end of the guideline.

Further, contrary to petitioner's Ground One (c), (d) and (f) claims allege, the plea agreement

makes no reference *at all,* let alone any promises to *"take care of"* any state charges for a July 20,

2005 incident or an outstanding warrant in Polk Co., FL, or to provide protection to petitioner and his

family via a name change or the witness protection program.

Nor was there, as petitioner's Ground One (e) claim alleges, a *promise* of a U.S.S.G § 5K1.1

motion by the Government for downward departure for substantial assistance. Paragraph 12 and 13 of

the plea agreement state:

> 12. There have been no representations whatsoever by any agent or employee of the United States, or any other law enforcement agency, as to what the final disposition in this matter should and will be. This agreement includes **nonbinding** recommendations by the United States, pursuant to Rule 11 (c)(1)(B), however, the Court is **not** bound by these sentence recommendations, and the defendant has **no** right to withdraw a guilty plea if the Court does not follow the sentencing recommendations set forth in this plea agreement.
>
> 13. **If** the defendant is forthright and truthful as required by this agreement, **does not engage in any bond violation or unlawful behavior after signing this agreement**, does not obstruct or impede the administration of justice by engaging in conduct defined under Application Note 4(a) - (j) of Guideline 3C1.1 after signing this agreement, pays the special assessment fee, and otherwise complies with the terms of this agreement, **then** the United states will make the following **nonbinding** recommendations:
>
> A. The United States will recommend a <u>two-level</u> reduction for "acceptance of responsibility," pursuant to Guideline 3E1.1;
>
> B. The United States will recommend an additional <u>one-level</u> reduction for "timely acceptance", [sic] provided the requirements of Guideline 3E1.1(b) are met, including the requirement that the defendant's base offense level be sixteen (16) or greater;
>
> C. The United States will recommend the <u>minimum fine</u>;
>
> D. The United States will recommend that any sentence of <u>incarceration should be at the lower end</u> of the applicable guideline range;

E.  If the defendant is sentenced to incarceration, the United States will not object to a defense request for intensive drug rehabilitation;

F.  The United States will urge the Court to modify the defendant's bond so he can remain on a personal recognizance bond and attempt to substantially assist authorities in the Northern District of West Virginia.  As well, the United States will ask the Court to delay any pre-sentence investigation and sentencing, while the defendant attempts such substantial assistance, all in his pursuit of relief under Guideline 5K1.1 (Guideline downward departure) and/or Title 18, United States Code, Section 3553(3) (relief from statutory mandatory minimum sentence).

(Dkt.# 6 at 4 - 5).*(emphasis added).*

Not only are petitioner's Grounds One (c), (d), and (e) not even mentioned in the plea agreement, petitioner's Ground One (e) argument indicates  a misunderstanding of how a motion for downward departure for substantial assistance works.   United States Sentencing Guidelines § 5K1.1 states: "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1.

A motion under § 5K1.1 for downward departure can only be made by the Government, and it is only made when, in the estimation of the Government, it has been earned.  Such a motion is only made after assistance has been rendered and evaluated by the Government.  U.S. v. Chavez, 902 F.2d 259, 267 (4th Cir. 1990).

The transcript of the plea hearing reveals that petitioner clearly understood the explicit and unambiguous language of the plea agreement as explaining  that the Government had no obligation to provide anything other than what was set forth in writing and agreed to in the plea agreement, and that the recommendations made by the Government were not binding on the Court:

THE COURT: Mr. Rohrbaugh, do you understand and agree with the terms contained in the plea agreement?

THE DEFENDANT: Yes, Your Honor.

**THE COURT: Has anything further been agreed to, either orally or in writing, that is not contained in the plea agreement?**

**THE DEFENDANT: No.**

Dkt.# 121 at 25.  (emphasis added).

. . .

**THE COURT: Is your plea of guilty the results of any promises or inducements other than those contained in the plea agreement?**

**THE DEFENDANT: No.**

Dkt.# 121 at 39.

THE COURT: Do you understand that the Court is not bound by any non-binding recommendations contained in your plea agreement and if the Court does not accept such non-binding recommendations, you would still be bound by your pleas of guilty and you would have no right to withdraw them?

THE DEFENDANT: Yes, Your Honor.

Id. at 31 - 31. (emphasis added).

Petitioner's own sworn testimony contradicts his claims that there was any "oral" agreement by the Government to provide things not explicitly contained in the plea agreement.  Further, all of petitioner's Ground One arguments that the Government "breached the plea agreement" overlook the key language in paragraph 13: ***"If the defendant is forthright and truthful as required by this agreement, does not engage in any bond violation or unlawful behavior* after signing this agreement . . .** and otherwise complies with the terms of this agreement, **_then_** the United states will make the following **nonbinding** recommendations[.]" (Dkt.# 6 at 5) (emphasis added).

Petitioner's argument conveniently ignores the *"if-then"* nature of the Government's plea agreement obligations.  Petitioner himself breached the plea agreement by violating nearly every promise he made in it.  As a result, he voided the Government's obligation to make the sentencing

recommendations set forth in the agreement or a motion for downward departure. Clearly, the petitioner's actions while on bond, subsequent to the signing of the plea agreement, relieved the United States of its obligation to recommend the sentencing reductions. As far as petitioner's claim that it is "ok for the prosecution to break an oral agreement but not the defendant," petitioner overlooks the fact that the Government's promises were *in writing*, as were his: his signature is on every page of the plea agreement, including the page where bond violations are explained as voiding the Government's obligation to make the sentencing recommendations and motion for substantial assistance.

There was no breach of the plea agreement. These claims have no merit nor any support in the record and should be denied.

**Ground Two: Whether the Government Coerced Petitioner's Plea by Threats to Prosecute the Mothers of his Children if he Did Not Accept the Plea.**

In this ground, asserted for the first time in petitioner's reply to the Government's response to his second amended § 2255 motion, petitioner claims that the AUSA forced and coerced him into pleading guilty when he was "pulled into a room . . . [and] told . . . this was his only option besides trial and if he didn't take it the mothers of his children would be prosecuted also." (Dkt.# 153 at 2). In support of this, petitioner attaches a copy of a June 1, 2006 letter from the AUSA to counsel, referencing a draft plea offer, and mentioning, *inter alia,* an agreement not to prosecute the "mother(s) of his child[ren], provided she, too, cooperate with me."[14] He asserts that because of this, his plea was not voluntary and "at no time did sentencing [sic] court ask me if I'd agreed to waive my rights or if Id [sic] been coersed [sic] into signing the plea." (Id.).

The Fourth Circuit Court of Appeals has held that an agreement not to prosecute a family

---

[14] Ultimately, petitioner did not sign the final version of the plea agreement until July 13, 2006, six weeks after the AUSA's June 1, 2006 letter. (Dkt.# 6). The plea agreement makes no mention of an agreement not to prosecute the petitioner's children's mother(s).

member is permissible and does not constitute unfair coercion in and of itself.  <u>Harman v. Mohn</u>, 683

F.2d 834, 838 (4th Cir. 1982).  However, when a plea agreement is based in part on an agreement not to

prosecute a third party, the trial court has a special responsibility to examine the agreement carefully to

determine that the plea is voluntary and that the government is acting in good faith.  Where a family

member receiving lenient treatment has not already been indicted, the court should take particular care

to ensure that the government acts in good faith and with probable cause to indict the third party.  <u>Martin</u>

<u>v. Kemp</u>, 760 F.2d 1244, 1247 - 48 (11th Cir. 1985).  Special care must be taken to ascertain the

voluntariness of guilty pleas entered in such circumstances.  There must be probable cause to believe

that the third party has committed a crime, otherwise, offering 'concessions' as to him or her constitutes

a species of fraud.  <u>U.S. v. Nuckols</u>, 606 F.2d 566, 569 (5th Cir. 1979).

Here, the record reveals that on July 5, 2005, the West Virginia State Police executed a state

search warrant on petitioner's residence in Dry Fork, Tucker County, West Virginia.  Three large bags

of marijuana and a semi-automatic rifle were seized; two other guns were found in a car parked at the

residence.  As a previously convicted felon facing federal prosecution, petitioner agreed to become a

confidential informant in hopes of avoiding prosecution.  However, in the fall of 2005, after signing up

to become an informant for the WV State Police, he surreptitiously continued his involvement in a

methamphetamine distribution with a Florida drug organization, an involvement that had actually begun

in 2000.[15]  He accepted a shipment of between 1.5 - 5 kilograms of substances containing

methamphetamine from the Florida organization but was unable to pay for it.  Accordingly, when the

Florida organization sent two couriers to collect, petitioner hatched a scheme to dispense with them

while simultaneously currying favor with the WV State Police.  On November 8, 2005, he planted the

---

[15] ". . . [F]rom in or about 2000 to on or about November 8, 2005 . . .the defendant did conspire and have a tacit understanding with other persons. . . .to distribute and possess with intent to distribute more than five hundred grams of . . . methamphetamine . . ." Information, Dkt.# 3 at 1.

methamphetamine in the couriers' car, then notified the WV State Police of the couriers' presence in WV and offered his assistance in catching them. The couriers, when arrested, professed ignorance of the planted drugs, explaining that they were only in the state to collect drug money. Upon further investigation, witnesses from Polk County, Florida came to WV to testify before the Federal Grand Jury. The truth came out and petitioner's scheme was revealed. All three defendants pled guilty under seal to violations of Title 21, U.S.C. §§ 841(a) and 841(b)(1)(A); petitioner to conspiracy, and the two couriers, to possession with intent to distribute. Because of the significance of their involvement with such a major methamphetamine organization, petitioner and the other two defendants were released on bond and permitted to work as confidential informants.

During plea negotiations in the spring of 2006 prior to petitioner's July 13, 2006 plea to the methamphetamine conspiracy charge, the Government agreed to "not seek forfeiture of his store, the R&G Mart in Tucker County, ***and a little piece of real property upon which he and family live, so that the mother of his children*** could continue to bring-in an income to support his children while [petitioner] . . . served his time in prison." (Dkt.# 73 at 4). (emphasis added).

It is apparent that at least one of petitioner's children's mothers lived with him during the course of the five year methamphetamine distribution conspiracy. As such, in view of the large amounts of drugs and unexplained income, as well as firearms and other property purchased with drug proceeds, she could hardly have been unaware of the crimes being perpetrated all around her. Clearly it is reasonable to assume that the AUSA did have probable cause to believe that she had sufficient criminal involvement in the conspiracy, to negate any imputation of fraud to the AUSA, pursuant to <u>Nuckols</u>, *supra.* In any case, petitioner's own sworn testimony at his Rule 11 hearing flatly contradicts this claim:

> **THE COURT: Mr. Rohrbaugh, is your plea of guilty to this One Count Information and the portion thereof that's before the Court, the result of any**

**threats, or coercion, or harassment?**

THE DEFENDANT: Excuse me.

**THE COURT: Is your plea of guilty the results of any threats or - -**

**THE DEFENDANT: No, sir.**

**THE COURT:  - - coercion, or harassment?**

**THE DEFENDANT: No, sir.**

**THE COURT: Is your plea of guilty the results of any promises or inducements other than those contained in the plea agreement?**

**THE DEFENDANT: No.**

(Dkt.# 121 at 39). *(emphasis added).*

"Representations of defendant, his lawyer, and prosecutor at plea hearing with respect to lack of promises influencing guilty plea constitute a formidable barrier in any subsequent collateral proceedings, since strong solemn declarations in open court carry a strong presumption of verity, and subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." Blackledge v. Allison, 431 U.S. 63, 73-74 (1974). Therefore, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992).

This claim is refuted by the record. At the plea hearing, the government orally set forth the terms of the written plea agreement. (Dkt.# 121 at 17 -23. At the conclusion of the government's recitation, the petitioner was asked if the plea agreement contained his signature. (Id. at 16 -17). The petitioner stated that it did. Id. The petitioner was then asked if he understood and agreed with the terms and provision of the agreement. (Id. at 25). The petitioner stated that he did. (Id.). The petitioner then

23

confirmed that he had gone over the agreement with counsel before he signed it, and that counsel had answered all of his questions about the agreement. (Id. at 26). The defendant was then specifically asked whether he believed there were any other promises or inducements, not contained in the written agreement. (Id. at 39). The petitioner said that there were not. (Id.) He specifically denied he had been coerced into signing the agreement. (Id.). It was not until after the petitioner had been sentenced, and decided he was unhappy with his sentence, that he asserted he was coerced or persuaded to take the plea. The petitioner has not offered "clear and convincing evidence" which would call into question his statements made under oath during the plea colloquy. Nor has the petitioner provided sufficient evidence that any outside agreements existed. See Sutton v. United States, *supra* (petitioner must establish grounds by a preponderance of the evidence). Accordingly, this claim lacks merit, is unsupported by the record, and should be denied.

**Ground Three**: **Whether Petitioner's Sentence was Improperly Enhanced by Additional Points.**

Petitioner contends that his sentence was improperly enhanced by: a criminal history point for a prior petit larceny charge in Tucker County WV, a charge which had no case number; two points for committing the instant offense while still on probation for a prior offense; and that the drug weight was erroneously miscalculated as higher than it should have been.

United States Sentencing Guidelines § 4A1.1 is used to determine a defendant's criminal history. Section 4A1.1(a) adds three points for "each prior sentence of imprisonment exceeding one year and one month." Section 4A1.1(b) adds two points for "each prior sentence of imprisonment of at least sixty days not counted in (a)." Section 4A1.1(c) states: "Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item." Section 4A1.1(c) contemplates only "prior sentence[s]." Accordingly, U.S.S.G. § 4A1.2(a)(1) defines prior sentences as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct

not part of the instant offense." The definition says nothing about whether a case number must be included in order to qualify for the allocation of criminal history.

Regarding his one-point criminal history enhancement for the prior petit larceny charge, petitioner argues that "[i]n order to have a case there would have to be a case number therfore [sic] petitioner was improperly enhanced." (Dkt.# 107 at 22). This claim, in addition to being a questionable leap in logic, lacks merit, being easily disproven by a cursory review of the record. The PSR reveals that, in compiling information on petitioner's criminal history, the probation officer reviewed documents from the Circuit Court for Tucker County, Parsons WV for a February 1996 arrest[16] which originally charged petitioner with breaking and entering, for which petitioner ultimately pled guilty to the lesser-included offense of petit larceny. He was sentenced on September 12, 1997 and received 1-5 years of probation. There is no question but that the additional criminal history point was validly calculated.

Petitioner further objects to being assessed two points for committing the instant offense while still on probation from a prior conviction. Petitioner makes an unclear argument denying being on probation in West Virginia for a July 20, 2005 offense, saying that his probation officer, having found out about his innocence of those charges, released him from probation.[17] He then says that "[i]n the mean time FA [sic] violated the petitioner, not setting a hearing to prove his innocence [sic]. However they could not hold him on probation [sic] because WV had already released him for successfully completing his probation, by doing his community servise [sic] paying his fines to the state of FA [sic] and his monthly probation fees to WV. Therefore he should not be enhanced the additional two points

---

[16] The Circuit Court, Tucker County WV documents apparently did not provide an actual case number for the conviction.

[17] The PSR makes no such claim. The PSR says that on July 29, 2005, petitioner waived his preliminary hearing on the two charges arising out of the July 20, 2005 offense and the cases remain pending in Circuit Court for Randolph County, Elkins WV. Dkt.# 74, ¶ 82 at 19.

of being on probation." (Dkt.# 107 at 22).

A review of the record reveals that petitioner's claim has no merit. The PSR states petitioner is assessed two points in his criminal history for committing the present offense while still on probation in Polk County, Florida. The present offense, as described in the one-count Information petitioner pled guilty to on July 13, 2006, states that

> . . . **from in or about 2000 to on or about November 8, 2005** . . .the defendant did conspire and have a tacit understanding with other persons. . . .to distribute and possess with intent to distribute more than five hundred grams of . . . methamphetamine . . .

Information, Dkt.# 3 at 1. (emphasis added).

The Information filed in petitioner's case, taken together with the findings reported in his PSR reveal that petitioner was not only still on probation for October 2002 drug possession charges in Polk County, Florida when he committed the present offense, but also that petitioner began the presently-charged methamphetamine conspiracy *two years before* he committed the Polk County, Florida charges, and continued to engage in the conspiracy throughout the entire time period of his arrest, conviction and twice-extended probation[18] for the Polk County, Florida charges.

As for petitioner's claim that the drug weight was erroneously calculated as being higher than it should have been, the most cursory review of the record reveals that this claim is completely without merit. In ¶ 14 of his plea agreement (Dkt.# 6 at 6), petitioner himself stipulated and agreed to the drug amounts and total drug relevant conduct that he is now disputing. Further, at his plea hearing, he not only failed to object to the Government's witness' detailed testimony on the issue, he also expressly testified he had no additions or corrections to the witness' testimony. (Dkt.# 121 at 38). Finally, at

---

[18] Petitioner pled guilty and received one year's probation. "On March 29, 2004, an Affidavit of Violation was submitted. On April 29, 2004, the defendant failed to appear and a capias was issued. The capias was withdrawn on May 13, 2004. On June 17, 2004, the defendant admitted to the violation and the court extended probation by two years. On August 18, 2005, an Affidavit of Violation was submitted and a warrant was issued. This matter remains pending action of the court. (Dkt.# 74, par. 76 at 15 - 16).

sentencing, petitioner entered no objections to his PreSentence Investigation Report ("PSR") to the drug amount calculation issue. (Dkt.# 74 at 43 - 51). "When the amount of drugs for which a defendant is to be held responsible is disputed, the district court must make an independent resolution of the factual issue at sentencing," where "[t]he government bears the burden of proving by a preponderance of the evidence, the quantity of drugs for which a defendant should be held accountable." <u>See</u> <u>United States v. Gilliam</u>, 987 F.2d 1009, 1013 (4th Cir. 1993) (citing U.S.S.G. § 6A1.3(b) and <u>United States v. Goff</u>, 907 F.2d 1441, 1444 (4th Cir. 1990)).  The government can meet its burden "by a stipulation of the parties that the court determines to have a reasonable factual basis." <u>Id.</u>  Moreover, the government carries its burden "if a defendant fails to properly object to a recommended finding in a presentence report . . ." <u>Id.</u>

These claims have absolutely no merit and relief should be denied.

**<u>Ground Four</u>: Whether the District Court Violated Fed. Crim. Pro. Rule 32 at Petitioner's Sentencing Hearing**.

Petitioner raises three claims alleging that the District Court violated Fed. R. Crim. Pro. 32 at his sentencing hearing: 1) the Court "did not provide . . . [him] a wrtten [sic] summery [sic] or summerize [sic] in comera [sic] any information excluded from the PSI [sic] ON [sic] which the court did rely on in sentencing so movant would have a reasonable opportunity to comment on the information.  Reguarding [sic] "the old Mallow Farm" for one." (Dkt.# 107 at 11); 2) the Court did not provide him a reasonable opportunity to respond to the Government's supplemental sentencing allegation or to speak in his own defense, in hopes of mitigating his sentence; and  3) the Court failed to advise him of his appellate rights or explain to him that he could appeal *in forma pauperis*.

Petitioner's first claim appears to specifically  allege that the Court violated Fed. R. Crim. Pro. 32(i)(1)(B), which states:

(i) Sentencing.

(1) In General.

At sentencing, the court:

(B) must give to the defendant and the defendant's attorney a written summary of - - or summarize in camera - - any information excluded from the presentence report under Rule 32(d)(3)[19] on which the court will rely in sentencing, and give them a reasonable opportunity to comment on that information[.]

Fed. R. Crim. Pro. 32(i)(1)(B).

Here, petitioner has provided no specifics as to what he is alleging was concealed from him, other than "'the old Mallow Farm'[20] for one."  The "old Mallow Farm" is not one of the type of exclusions contemplated by Fed. R. Crim. Pro. 32(d)(3), because it is not a diagnosis, a source of information obtained upon a promise of confidentiality or any other type of information.  Thus, this claim makes no sense.  Because it is insufficiently pled, it cannot be responded to.  Habeas pleadings must meet heightened pleading requirements.  McFarland v. Scott, 512 U.S. 849, 856 (1994).

Next, petitioner contends that at sentencing, the Court did not offer him an opportunity to speak in his own defense, in hopes of mitigating his sentence.  He avers that he knew the Court was upset with him for attempting to sell the forfeited property (i.e., the old Mallow Farm), and had he been permitted to speak, he would have explained that his mother sold the farm[21] and kept the money and that he should

---

[19] Fed. R. Crim. Pro. 32(d)(3) states:
(3) Exclusions.
The presentence report must exclude the following:
(A) any diagnoses that, if disclosed, might seriously disrupt a rehabilitation program;
(B) any sources of information obtained upon a promise of confidentiality; and
(C) any other information that, if disclosed, might result in physical or other harm to the defendant or others.

[20] The "old Mallow Farm" was the property that petitioner attempted to sell out from under the Government, after agreeing to its forfeiture in the plea agreement.

[21] Petitioner does admit that "[o]nly when he broke his bond agreement and was incarserated [sic] did he ask his mother to sell the place so he could pay a small magistrate judgment of about $150.00.  (the government states it like the judgment was a large portion of the money which it was not.). [sic]  The defendants [sic] mother was then suppose [sic] to put the remainder of the money towards defendants [sic] fine befor [sic] sentencing, where she dept [sic] the money. Defendant should not be punished for the actions of someone else. If given the opportunity

not be punished for his mother's actions. (Dkt.# 135 at 3). Further, he contends, he would have told the

Court that he had "two more pieces of property that he paid a lot more than that for that he would have

been willing to give up to resulve [sic] the misunderstanding[.]" Dkt.# 109 at 25 -26).

A review of the sentencing transcript technically supports petitioner's allegation that the Court

did not offer him the opportunity to allocute:

> **THE COURT: . . . The Court would be glad at this time to have the allocution from defense counsel in this matter. Mr. Freeman, anything you would like to say?**

> MR. FREEMAN: Yes, Your Honor. I would call the Court's attention to specifically efforts [sic] of the Government to Mr. Rohrbaugh as a confidential informant for a period of six months while he was out on bond - -

> **THE DEFENDANT: Ten (10) months.**

> **MR. FREEMAN: - - ten (10) months, Your Honor. My client has corrected me.** Wherein the Government indicates that he made an amazing over 100 [sic] controlled drug purchases for the "West Virginia State Police Bureau of Criminal Investigations. During that time as the Court knows, Mr. Rohrbaugh was exposed repeatedly to drug use, drub abuse by others and it placed him in situations where Randy, a known drug addict, was placed in or close [sic] proximity to drugs, to people using drugs and those were made available to him.

> Mr. Rohrbaugh has indicated to me that he was able to do that with great success for a - for a lengthy period of time and that, however, after repeated exposures to that culture during that time and, of course, Mr. Rohrbaugh in doing that voluntarily in an effort to provide substantial assistance to quite honestly, effect a reduction in his sentence. So his motives weren't purely societal in nature, they were self-serving. However, he got to a point where that temptation was too great and he did relapse into drug abuse himself and at that point in time was presented with a very desperate situation. He made the wrong choice in choosing to be deceptive in the drug screening He did that knowingly and voluntarily and it was wrong. He has admitted to me he recognizes the wrongfulness of his conduct in that regard.

> However, I'd like just [sic] to make the Court aware that at that point in time, Randy had at least three-fold problem [sic] in his mind, which is the reasoning of a drug addict in that mind.

---

to speak at sentencing defendant would have forfeited another property of equall [sic] of greater value or money equal to the Farm property. (Dkt.# 135 at 3).

No. 1, he faced another bond revocation which was going to place him back in jail; second of all, he is well aware that the Court is going to be made aware of that positive drug screen, is going to negatively affect his sentence; and thirdly, he knew quite honestly, that would be the end of any opportunity to perform substantial assistance for the Government and affect [sic] a reduction of his sentence. And in that desperate drug addicted reasoning, he made the wrong choice to use the whizzanator. He asked me to make the Court aware of the factors that led to that poor decision so that the Court didn't think he was being dishonest about his period of time on bond.

We would like the Court to consider in its decision-making process in the Government's own words, the amazing substantial assistance that Randy provided. The Government did not file their motion for that substantial assistance to be considered by the Court so that this Court can't you know reduce Randy's sentence accordingly. However, we would like the Court to consider it in imposing a sentence. You know that was already - - that parts cut off [sic], he can't receive the - - redaction [sic] that he otherwise may have received or at least a recommendation for such that he would have received from the Government. However, we would like the Court to consider that when imposing a sentence. He made every effort at that point in time to - to make up for some of the wrongfulness of his conduct over a period of years and he did so with great success. I believe the Government was able to prosecute people who had been targets for a long time that they otherwise did not have access to. Mr. Rohrbaugh has indicated to me that 20 or more of those controlled buys were actually for "crack" cocaine, methamphetamine or cocaine and one at least was a purchase of at least four pounds of marijuana. So he was - he was very successful in providing that assistance to the Government although, he can't receive full credit for it, we would like the Court to  - - to consider that in imposing a sentence.

**And I believe that's all we have to say on Mr. Rohrbaugh's behalf.**

THE COURT: All right. Well, Mr. Freeman, you have represented your client very - - very professionally and very efficiently. Thank you very much for what you have presented to the Court in helping the Court reach a very difficult decision - -

MR. FREEMAN: Thank you, Your Honor.

THE COURT: - - because it involves the freedom of a human being.

(Dkt.# 122 at 10 - 13). *(emphasis added).*

Fed. R. Crim. Pro. 32(a) states, in pertinent part: "Before imposing sentence the court shall

afford the defendant an opportunity to make a statement in his own behalf and to present any

information in mitigation of punishment."

Before imposing sentence, a District Court "must address the defendant personally in order to

permit him to speak or present any information to mitigate the sentence. Fed. R. Crim. P. 32(i)(4)(A)(ii). This rule 'is not satisfied by merely affording the defendant's counsel the opportunity to speak. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself.'" <u>U.S. v. Muhammad</u>, 478 F.3d 247, 249 (4th Cir. 2007), *quoting* <u>Green v. U.S</u>, 365 U.S. 301, 304, 81 S. Ct. 653, 5 L. Ed. 2d 670 (1961).

In <u>Muhammad</u>, a defendant being resentenced was not given an opportunity to allocute, although he had allocuted at his original sentencing. Although the Fourth Circuit found that the trial court's failure to afford a defendant the opportunity to allocute to be plain error, it also held that there was no *per se rule* of reversal. To establish plain error, Muhammad had to not only prove that the error occurred, that it was plain, but also that it had affected his substantial rights, pursuant to the test set forth in <u>U.S. v. Olano</u>, 507 U.S. 725, 731-32, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). Even then, the Fourth Circuit held, correction of the error remained within the Court's discretion, which it declined to exercise "unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." <u>Muhammad</u> *supra* at 249, *quoting* <u>U.S. v. Young</u>, 470 U.S. 1, 15, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985). Although under the circumstances of that case, Muhammad's sentence was vacated and the case was remanded for resentencing, the Court only did so because it held that "the possibility remains that an exercise of the right of allocution could lead to a sentence less than that received, fairness and integrity of the court proceedings would be brought into serious disrepute were an appellate court to allow the sentence to stand. <u>Muhammad</u>, *supra* at 249 - 50.

Not withstanding Rule 32(a), the United States Supreme Court has held that the mere failure to strictly adhere to Rule 32 at sentencing is not grounds for collateral attack. The failure of a trial court to ask a counseled defendant whether he has anything to say before sentence is imposed is "not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is

neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" Hill v. U.S., 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962), *quoting* Bowen v. Johnston, 306 U.S. 19, 27 (1939).

The Fourth Circuit has held that as long as there are no unusual circumstances (such as the judge being unaware of the facts of the case), then a complete failure to permit allocution is not subject to habeas review. In doing so, it stated:

> We followed Hill when the district judge neglected to afford the defendant an opportunity to address the court and there were no "aggravating circumstances." U.S. v. Bebik, 302 F.2d 335, 377 (4th Cir. 1962). On the other hand, where the district judge was uninformed as to relevant facts because of his failure to afford the defendant an opportunity to speak, we remanded the habeas proceeding for a hearing.

Ashe v. U.S., 586 F.2d 334, 336 (4th Cir. 1978).

Here, although petitioner did not speak directly to the Court to mitigate his sentence, during counsel's long, impassioned allocution, it is apparent from the record that petitioner was at least a minimal participant, as he interrupted counsel and briefly spoke directly to the Court to add or correct details of facts misstated by counsel.

Petitioner contends that had he only been given the opportunity, he would have attempted to mitigate the damage he had done to his credibility in the eyes of the Court, when he surreptitiously sold the property he had already agreed to forfeit. He claims he would have offered the Court a property of greater value than the one he wrongfully sold, or he would have offered a cash equivalent. The record contradicts his ability to do this.[22] Petitioner owed a money judgment to the Government of $250,000.00

---

[22] According to the PSR, petitioner owed a balance of $6,182.00 on an auto loan; $6,088 for two other auto loans; a total of $17,361.00 to various collection agencies for unpaid medical expenses; and had already had $29,095.00 charged off by various other credit agencies. His Social Security records indicated he had had no income

for the charged offense, which, even the forfeiture of *all* of his property would not cover.[23]  Even

petitioner implicitly admits he  was so short of cash, he sold the farm to pay a separate debt, a *de minimis*

state court magistrate judgment of $150.00. (Dkt.# 135 at 3).[24]

Petitioner alleges that had he only been permitted to explain all of this to the Court it would have

made a "big difference" in sentencing.  The undersigned disagrees.  The record reveals that not only did

petitioner knowingly give his mother power of attorney while he was in jail, so that she could sell the

already-forfeited farm, but he also managed to arrange to sell or dispose of *every other item* to be

forfeited to the Government. (Dkt.# 73 at 4).[25]  Further, petitioner even sold the store, intentionally

excepted from forfeiture by the Government for the benefit of petitioner's girlfriend and their children's

survival during his incarceration. (Id. at 5).  It is unlikely that the Court would have been persuaded by

what petitioner now contends he would have said at allocution.  Furthermore, in this case, there were

no "aggravating circumstances," and the District Judge presiding over petitioner's sentencing hearing

had also presided over his plea hearing, and was privy to the entire record, including petitioner's PSR,

---

from employment since 2004.  His only assets were the aformentioned property, the "old Mallow Farm," comprised of four parcels over approximately 6 acres, valued at approximately $20,350.  (Dkt.# 74 at 23 - 24).  His plea agreement stipulated that he agreed to forfeit a total of $250,000.00 to the Government.  This was to be accomplished by additionally forfeiting the farm, his Ford Explorer, a Ford Mustang, a Harley Davidson motorcycle and an unfinished custom motorcycle. (Dkt.# 6 at 3).

[23]  The only items of petitioner's property that were not forfeited were a store and a small piece of property, deliberately excepted from forfeiture by the Government for petitioner's children and their mother to have an income from, and a place to live, respectively, during petitioner's incarceration.  (Dkt.# 73 at 4).

[24] Despite petitioner's claims otherwise, the record reveals that the $20,000.00 proceeds from the sale of the farm were used to pay off the Tucker County, WV magistrate judgement and "the remainder was pocketed by the defendant and/or his mother."  Dkt.# 73 at 4.

[25] Petitioner offers various excuses for why the other property disappeared of: the store was "given back" by his girlfriend, who did not want the responsibility for running it; incredibly, he contends that no money was received in exchange for this valuable asset.  He claims that the motorcycle belonged to his father and that he bought the Ford Explorer for his girlfriend as a gift. "You cannot forfiet things that are not yours to forfiet. [sic]" (Dkt.# 135 at 3 - 4).  Further, he claims, the Ford Mustang was "tataled [sic] between the time the plea agreement was wrtten [sic] and agreement was signed. Clearly not the defendants [sic] fault."  (Id.).

and two sentencing memorandums by the Government. In addition, the Court heard extensive argument

from both counsel at the sentencing hearing, and only arrived at his decision on the sentence to impose

after considering it all:

> . . . [the day after being released on bond]. .. the Defendant was involved
> in a domestic incident whereby he smashed out the side glass window
> of another's car . . .[his] bond was initially revoked for his behavior;
> however, the Government again gave . . . [him] yet another chance and
> moved the Court for release on bond to conduct substantial assistance .
> . . [he] remained on bond for over 6 months; however, on May 30, 2007
> . . . [he] was caught tampering with his drug screen . . . as pointed out by
> the probation officer, it is difficult to ascertain how long . . . [he] may
> have been tampering with his drug screening tests . . . [He] did then test
> positive for the use of marijuana and oxycodone, which . . . [he] also
> admitted. This behavior clearly shows the Defendant's unwillingness
> and inability to voluntarily withdraw himself from criminal conduct.
> However . . .[his] greatest failure to accept responsibility came even
> later, while . . . [he] was in jail after being revoked for the drug screening
> incident. The Defendant, from jail and through his mother, whom he
> gave a power of attorney, sold property that the Defendant had already
> agreed, through his plea agreement, to forfeit to the government as
> proceeds from his drug conspiracy. Upon review of the power of
> attorney, it appears that the Defendant was very intentionally giving this
> power of attorney to his mother for the specific purpose of selling this
> property. To that, the Court believes it demonstrates that not only was
> the Defendant unwilling to voluntarily assist the government in the
> recovery of the fruits of the offense, even though the Defendant had
> already promised to do so, but that he was, in fact, willing to hinder such
> efforts. This was a total disregard of respect for the situation the
> Defendant was in and for the authorities who had tried so hard to give
> . . . [him] opportunities to help himself, and an extreme showing of
> failure to accept responsibility in the Court's opinion . . . without even
> considering the Defendant's dishonest behavior prior to the entry of his
> plea when attempting to serve as a confidential informant . . . the Court
> cannot find that the Defendant has accepted responsibility . . . [and his]
> objections in this respect are overruled."

Dkt.# 122 at 8 - 9.

Clearly, the Court was not uninformed of any relevant fact by petitioner's lost opportunity for

allocution. Furthermore, given the breathtaking breadth and magnitude of petitioner's duplicity and

misconduct while on post-plea bond, it is unlikely that the Court would have imposed a lesser sentence

upon hearing the substance of what petitioner claims he intended to say, since it had no merit anyway. The District Court's failure to permit allocution does not rise to the level of a miscarriage of justice, nor can petitioner show that his substantial rights were affected. This claim has no merit and relief should be denied.

Finally, petitioner contends that at sentencing, the Court failed to advise him of his appellate rights or explain to him that as an indigent, he could appeal *in forma pauperis*. A review of the record shows otherwise, as this excerpt from the sentencing hearing shows:

> THE COURT: . . . In the Plea Agreement that's been before the Court and discussed, addressed by counsel, and the Court, the Defendant agreed to the waiver of certain of his appellate rights. Specifically, in Paragraph 17 of the plea agreement, the Defendant waived his appellate rights to any sentence within the maximum provided by the statute. The waiver would appear applicable. With few exceptions, any Notice of Appeal must be filed within 10 days of judgment being entered in your case. If you are unable to pay the cost of an appeal, you may apply for leave to appeal *in forma pauperis.* If you so request, the Clerk of Court will assist you and/or your very distinguished and well-trained attorney in preparing and filing a Notice of Appeal in your behalf and/or the Financial affidavit that would accompany your application for leave to appeal *in forma pauperis.*

Sentencing Hearing Transcript, Dkt.# 122 at 18.

Despite the Court's offer, petitioner did not request that the Court assist him or his attorney in filing the notice of appeal.

This claim has no merit, nor any support in fact or law. Relief should be denied.

**Ground Five**: **Whether the District Court Failed to Cite to Title 18 U.S.C. § 3553(a) at Petitioner's Sentencing Hearing**.

In his first amended § 2255 motion, petitioner claims that the District Court failed to discuss 18 U.S.C. § 3553(a) at his sentencing hearing. He argues that the Court "is soppose [sic] to site [sic] the rules of 18 USCS 3553, stating that the guidelines were not manditory [sic] and court [sic] could go below or above the guidelines. Being that movant aided in substantial assistance to the government,

Court [sic] had good reason to sentence below the guidelines and didn't." (Dkt.# 146 at 7). In his reply to the Government's response that this claim was not true, petitioner backed off somewhat from his claim, contending that without the transcripts to review, "it is hard . . . to say exactly what parts of f18 USCs [sic] 3553 were discussed, but the part were [sic] it is in the judges [sic] descression [sic] to go below the mandatory minimum based upon Substantial Assistance. And that the Manditory [sic] minimum is not manditory [sic] only advisory." (Dkt.# 148 at 1)

The undersigned construes petitioner's attack on the reasonableness of his sentence as a claim that his sentence failed to comply with 18 U.S.C. § 3553.[26] In <u>Booker</u>, 543 U.S. at 220,[27] the Supreme Court excised the provisions of the Sentencing Reform Act that <u>mandated</u> sentencing in conformance with the guidelines and rendered the Guidelines merely advisory. District courts, however, were not given unbridled discretion in sentencing. Rather, they were instructed they must still "consult those Guidelines and take them into account when sentencing." <u>Id.</u> at 767. District courts - post-<u>Booker</u> -

---

[26] 18 U.S.C. § 3553(a) provides, in part, "Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider:
   1) the nature and circumstances of the offense and the history and characteristics of the defendant;
   2) the need for the sentence imposed-
      A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
      B) to afford adequate deterrence to criminal conduct;
      C) to protect the public from further crimes of the defendant; and
      D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
   3) the kind of sentences available;
   4) the kinds of sentence and the sentencing range established [by the Sentencing Guidelines];
   5) any pertinent policy statement [issued by the Sentencing Commission];
   6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
   7) the need to provide restitution to any victims of the offense."

[27] <u>U.S. v. Booker</u>, 543 U.S. 220 (2005) (holding that the mandatory sentencing guidelines scheme that provided for sentence enhancements based on facts found by the court, not the jury, and not admitted by the defendant, were unconstitutional as a violation of the Sixth Amendment. The Court remedied the constitutional violation by severing and excising the statutory provision that made the guidelines mandatory, thus rendering them advisory).

must also adhere to the commands of 18 U.S.C. § 3553.  See United States v. Green, 436 F.3d 449, 455 (4th Cir. 2006).

Sentences imposed by district courts under the above standards are reviewed for unreasonableness.  Booker, at 543 U.S. at 261.  In determining whether a given sentence is appropriate, the court "may not presume that the Guidelines range is reasonable."  Gall v. U.S., 552 U.S. 38, 128 S. Ct. 586, 594, 169 L. Ed. 2d 445 (2007).   The Guidelines are to be treated as the "starting point and initial benchmark."   Kimbrough v. U.S., 552 U.S. 85, 109, 128 S. Ct. 558, 169 L. Ed. 2d  481 (2007), quoting Gall at 49.  The district court must make an individualized assessment, based upon the facts presented, and determine whether a sentence outside of the Guidelines is warranted.  Gall at 597.  While 18 U.S.C. § 3553(a) still requires a court to give respectful consideration to the Guidelines, Booker "permits the court to tailor the sentence in light of other statutory concerns as well."  Kimbrough at 101, quoting Booker at 245 - 246.  Since a sentencing judge has greater familiarity with a given case and an individual defendant than the Sentencing Commission, he is in a superior position to find facts and judge their import under § 3553(a) in a particular case.   Kimbrough at 109, quoting Gall at 51 (internal quotation marks omitted).  The Court is not required to "robotically tick through every factor" enumerated in Title 18 U.S.C. 3553(a) before imposing a sentence.  United States v. Eura, 440 F.3d 625, 631- 632 (4th Cir. 2006), as many of those statutory factors are already "built into the Sentencing Guidelines."  United States v. Johnson, 445 F.3d 339, 343, 345 (4th Cir. 2006).  So long as a sentence is "selected pursuant to a reasoned process in accordance with the law, in which the court did not give excessive weight to any relevant factor, and which effected a fair and just result in light of the relevant facts and law," the sentence will be deemed reasonable.  Green supra at 457.  A petitioner may rebut the presumption of reasonableness only by demonstrating his sentence is unreasonable "when measured against the § 3553(a) factors."  United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005); see, also,

<u>Moreland</u>, 437 F.3d at 433.   Petitioner's claim lacks merit, as the transcript of those proceedings shows:

> THE COURT: As the Court has earlier mentioned, while these guideline findings must be considered by the Court, they are now only advisory in nature and the Court may also consider those factors set out in Title 18, United States Code, § 3553(a) in sentencing the Defendant. The Court has also received a supplemental sentencing memoranda from the Government and has carefully considered the positions set forth therein.
> . . .
>
> THE COURT: . . . After considering the Sentencing Memoranda and the statements filed by the Government and the United States Attorney and the sentencing factors that are set forth in Title 18, United States Code, § 3553(a), the Court finds and determines the Guideline range, as found by the Court, provides an appropriate sentence for the Defendant in this case. After looking carefully at the appropriate factors, it is the judgment of the Court that the Defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 220 months. The Court has sentenced the Defendant to the middle of the - - of his applicable guideline range after considering everything before the Court. Based on the Defendant's conduct as a confidential informant before his plea of guilty, wherein the Defendant planted drugs on two individuals in hope of gaining favor with the Government, and like in hopes of getting out of the rather substantial drug debt, and based upon his conduct during pretrial release, including a domestic incident, continued drug use, a rather elaborate scheme to circumvent the drug screening process, and an attempt to knowingly sell out from under the Government property subject to forfeiture, the Court has been inclined to sentence the Defendant to the upper end of the guideline range. However, the Court does not now want to ignore the fact that Defendant did make over 100 buys for the Government. And while the Defendant's conduct in this matter has significantly impacted any favor the Defendant hoped to gain in making the controlled buys, the Court will still consider them and not sentence the Defendant to the upper end of the guideline range. Accordingly, the Court has looked at the middle of the guideline range as an appropriate sentence[.]

Sentencing Hearing Transcript, Dkt.# 122 at 10 and 14 - 15.

Clearly, not only did the Court cite to Title 18, United States Code, § 3553(a), it also gave careful consideration to all the facts of the case and petitioner's particular circumstances in applying the § 3553(a) factors in deciding petitioner's sentence. This claim lacks merit and should be denied.

**<u>Ground Six (a)</u>: Whether Counsel was Ineffective for Failing to Advise Petitioner of a Third Option, Entering an "Open Plea."**

In this claim, raised for the first time in petitioner's second amended § 2255 motion, he alleges

that "at no time during plea negotiations did counsel advise petitioner that he had an alternate "route" to take. He could have taken an open plea in which would [sic] have entitled him to a 3 level reduction for acceptance of responsibility." (Dkt.# 149-1 at 1). Further, he states "[i]f defendant is aware of his guilt and is led to believe by counsel that his only alternte [sic] route to trial is taking the plea that the government has offered; of course he's going to accept it." (Id.). In his reply to the Government's supplemental response, he expands on the prejudice counsel's failure in this regard caused him: ". . . petitioner would have received 3 level reduction for acceptance of responsibility, more than likely been sentence at the low end of the guidelines. and [sic] noting [sic]would have been confiscated so that would not have been and [sic] issue." (Dkt.# 166 at 1). Petitioner also argues that he was prejudiced by the loss of the reduction for substantial assistance.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart,

474 U.S. 52, 59 (1985) (footnote omitted); <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance.  <u>Strickland</u> 466 U.S. at 689-90.  Moreover, there are no absolute rules in determining what is reasonable performance.  <u>See</u> <u>Hunt v. Nuth</u>, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

During plea negotiations, the Fourth Circuit has imposed the following duties: "1) notify the client of a plea offer; 2) advise the client of the option to proceed to trial; 3) present the client with the probable outcomes of both the guilt and sentencing phases of each alternative; and 4) permit the client to make the ultimate decision." <u>Jones v. United States</u>, 2008 U.S. Dist. LEXIS 24908, at *7, (D. Md. Mar. 28, 2008), relying on <u>Jones v. Murray</u>, 947 F.2d 1106, 1110-1111 (4th Cir. 1991).

Petitioner asserts that counsel was ineffective because he never informed him of a third option to pleading to the plea agreement or going to trial.   Petitioner did not raise this claim until he filed his second amended § 2255 motion and his reply to the USA's response to his original § 2255 petition contradicts this later-made claim.  To refute the Government's pointing out that his sworn testimony at the Rule 11 hearing indicated complete satisfaction with his attorney, petitioner stated:

> **[u]p to that point he** *was* **satisfied.**  But if someone was not happy with there [sic] attorney up until that point they would get a knew [sic] attorney not file ineffective assistance of counsel.  **As you can see on pg. 8 Attachment A. of the defendants [sic] 2255 petitioner all the complaints were after the plea hearing**.

(Dkt.# 135 at 1). *(emphasis added).*

However, petitioner's present claim that counsel was ineffective for not advising him of the

"open" guilty plea option is an allegation of attorney ineffectiveness *before the plea* hearing. In the face of the evidence and testimony on the record, petitioner cannot now credibly argue that if only he been offered the "third option" of an "open" plea, he would have accepted that over the plea agreement offer. Clearly, petitioner was very satisfied with counsel's representation at the time of the plea hearing. His own sworn testimony, as well as the statements he made in these proceedings, when read in their entirety, reveal that he was not dissatisfied with counsel's performance in negotiating the plea agreement for him. Petitioner cannot piecemeal his argument by only selecting passages that seem favorable to him. The record must be read in its entirety. Petitioner invited a close reading of the record by making contradictory statements within it, and petitioner's reply to the Government's response to his original § 2255 motion includes language that does not comport with petitioner's claim. By making these contradictory statements, petitioner has helped defeat his own claim, and in keeping with the consistent notation of the Fourth Circuit: "[a] defendant in a criminal case cannot complain of error which he himself has invited." United States v. Herrera, 23 F.3d 74, 75 (4th Cir. 1994), citing Wilson v. Lindler, 8 F.3d 173, 175 (4th Cir. 1993) (en banc), cert. denied, 510 U.S. 1131(1994).

Furthermore, even if counsel did fail to advise petitioner of the option of an 'open' guilty plea, that is not ineffectiveness. Counsel may have believed that a negotiated plea deal was in his client's best interest. This is not ineffectiveness; it is simply good lawyering. It is the attorney's role to advise his client on the best course of action under the circumstances. There is nothing ineffective about counsel trying to convince his client to accept a plea deal, rather than proceed to trial. Counsel performed his plea negotiation duties appropriately under Jones v. U.S., *supra.* Had petitioner merely complied with his bond provisions regarding his conduct, he could have reaped all the benefits of the plea agreement.

Not only was counsel not ineffective in this regard, petitioner's allegations of prejudice over the loss of the "open" plea option have no merit. The Government's offer of the three-level reduction for

acceptance of responsibility and the motion for downward departure for substantial assistance were *part of* the plea agreement; despite petitioner's mistaken belief otherwise, an "open" plea is by definition, a plea *without* an agreement for anything more; it does not obtain for a defendant all the reciprocal benefits and concessions that petitioner insists he would have retained had he chosen that option. Petitioner's own gross misconduct while on bond lost him the hoped-for benefits of the plea agreement.

Finally, the property petitioner was required to forfeit had nothing to do with the plea agreement, despite its inclusion as a stipulation[28] there; it was forfeited upon conviction of an offense under 21 U.S.C. 841(a)(1) and 841(b)(1)(A), and would have been forfeited anyway, no matter how petitioner's conviction was obtained.  21 U.S.C. § 853 states, in pertinent part:

(a) Property subject to criminal forfeiture.

**Any person convicted of a violation of this subchapter or subchapter II of this chapter** punishable by imprisonment for more than one year **shall forfeit to the United States**, irrespective of any provision of State law -

(1) **any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;**

(2) **any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation;** and

(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise. The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II of this chapter, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

21 U.S.C. § 853(a). *(emphasis added).*

Here, counsel was neither ineffective nor was petitioner prejudiced.  Petitioner has failed to

---

[28] The forfeiture stipulation was contained within ¶ 14 of the plea agreement. Dkt.# 6 at 6.

sustain his burden under <u>Strickland</u> and this claim should be denied.

**<u>Ground Six (b)</u>: Whether Counsel was Ineffective for Not Doing More to Secure a Better Plea Agreement for Petitioner.**

Here, petitioner alleges that:

1)  counsel made him have his preliminary hearing on the same day as his plea;

2)  failed to ask for lab reports, discovery, a sentencing cap, or anything to aid in obtaining a better plea for petitioner.

3) when both petitioner and his mother asked counsel about "expunging his criminal history," counsel claimed "it wouldn't help;"

4) counsel failed to challenge the fact that the imposition of an additional criminal history point for a prior conviction was for a conviction that had no case number.  Petitioner contends that this case was expunged from his record and should not be considered.  Further, he argues that counsel should have challenged the two criminal history points assessed against him for committing the present crime while still on probation for that prior conviction because he was no longer on probation;      5) counsel failed to challenge the erroneous calculation of drug weight, which he contends resulted in a upward departure in his applicable sentencing guideline;

6) counsel "failed to help movant with his version of the PSI [sic];"

7) counsel spent an insufficient amount of time with him preparing for his defense, only "two interactions with movant in almost two years, one at the courthouse."

8) counsel failed to challenge the Government's breach of the plea agreement.

Petitioner's Six(b)(1) claim that counsel was ineffective for making him have his preliminary hearing on the same day as his plea; his Six(b)(3) claim that counsel was ineffective for telling petitioner and his mother that "it wouldn't help" when they asked about expunging petitioner's criminal history; his Six(b)(6) claim that counsel failed to help him with his version of the PSI are insufficiently pled.

He has offered no facts to support them, nor alleged how his circumstances would have been any different had counsel done otherwise.

Habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849, 856 (1994). The petition must come forward with evidence that the claim has merit. Nickerson v. Lee, 971 F.2d 1125, 1131 n.8 (4th Cir. 1992), *cert. denied,* 507 U.S. 923 (1993), *abrogation on other grounds recognized,* Yeatts v. Angelone, 166 F.2d 255 (4th Cir. 1999). Allegations amounting to nothing more than conclusions provide no basis for an evidentiary hearing.

Here, petitioner's Ground 6(b) 1, (b) 3 and (b) 6 claims of ineffective assistance of counsel are vague, conclusory and insufficiently pled. He has not even alleged, let alone shown, how having his preliminary hearing on the same day that he entered his plea, or how counsel's advice or lack thereof, about expunging his criminal history prejudiced him in any way. Nor has he provided any information about how counsel's alleged failure to help him with "his version of the PSI" harmed him. These claims are merely a laundry list of unsupported, bare-bones allegations. Petitioner has presented no proof that counsel was ineffective in these areas, and thus he has failed to show by a preponderance of the evidence that he is entitled to relief on these claims and they should be denied.

Petitioner's Six(b)(2) claim that counsel was ineffective for failing to ask for lab reports, discovery, a sentencing cap, or other things to aid in obtaining a better plea for petitioner, and his 6(b) 7 claim that counsel spent an insufficient time on his defense, are without support in the record. Petitioner's own sworn testimony at his plea hearing contradicts the claims:

THE COURT: All right. Has Mr. Freeman, your attorney, adequately represented you in this matter?

THE DEFENDANT: Yes, sir.

THE COURT: Has Mr. Freeman left anything undone that you think should have been done in your behalf?

THE DEFENDANT: No, Your Honor.

THE COURT: Have either you or your attorney, Mr. Freeman, found any defense to the charges contained in this Information?

THE DEFENDANT: No, Your Honor.

(Dkt.# 121 at 40).

Petitioner's Six(b)(5) claim alleges that counsel failed to challenge the erroneous calculation of drug weight, resulting in a upward departure in his applicable sentencing guideline.

"A plea of guilty is more than a voluntary confession made in open court. It also serves as a stipulation that no proof by the prosecution need by (sic) advanced . . . It supplies both evidence and verdict, ending controversy." Boykin v. Alabama, 395 U.S. 238, 242 n. 4 (1969) (quoting Woodard v. State, 42 Ala.App. 552, 171 So.2d 462, 469 (Ala. 1965)). However, "[w]hen the amount of drugs for which a defendant is to be held responsible is disputed, the district court must make an independent resolution of the factual issue at sentencing," where "[t]he government bears the burden of proving by a preponderance of the evidence, the quantity of drugs for which a defendant should be held accountable." See United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993) (citing U.S.S.G. § 6A1.3(b) and United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990)). The government can meet its burden "by a stipulation of the parties that the court determines to have a reasonable factual basis." Id. Moreover, the government carries its burden "if a defendant fails to properly object to a recommended finding in a presentence report . . ." Id.

At the plea hearing, after the Government witness concluded his testimony establishing a factual basis for the plea, this exchange was had:

THE COURT: All right. Mr. Freeman, did you have any cross-examination of the witness?

MR. FREEMAN: No, Your Honor.

THE COURT: All right. Mr. Rohrbaugh, is there anything in the witness' testimony that you would like to correct or - -

THE DEFENDANT: No, Your Honor.

THE COURT: - - any additions you would like to make to the witness' testimony?

THE DEFENDANT: No, Your Honor.

THE COURT: Are there any corrections that you would make or additions to the witness' testimony, Mr. Freeman?

MR. FREEMAN: No, Your Honor.

THE COURT: All right, thank you.

THE WITNESS: Yes, sir.

(WITNESS STANDS DOWN)

(Dkt.# 121 at 38).

Here, the PSR indicates that, after review of all the available evidence and witness testimony against petitioner, and even using "conservative figures and protecting against double counting, it appears that the defendant's relevant conduct that could be counted in this case is at least 40 pounds of methamphetamine . . . equal to 18.1 kilograms." (Dkt.# 74 at 14). At the plea hearing, the Government witness gave detailed testimony about the actual amounts of drugs implicating petitioner, and petitioner denied that he had any objection or correction to any portion of the testimony. The parties' stipulation that petitioner's total drug relevant conduct was more than one and a half kilograms but less than five kilograms indicates that petitioner did in fact, receive a "better" deal than he otherwise would have without the plea agreement. It was clear from the overwhelming evidence that there was substantially more methamphetamine, not to mention the "three large clear bags of marijuana"[29] found in the July 20, 2005 search of petitioner's residence, that could have been attributed to him had he rejected the plea

---

[29] The amount of marijuana was calculated as approximately .45 kilograms. Dkt.# 74 at 12.

agreement and gone to trial. Petitioner's stipulation and guilty plea were enough for the government to meet its burden of proof. Because the parties had stipulated to the drug amount, there was no need for counsel to ask for discovery or further lab reports. There was no 'erroneous calculation of drug weight" for counsel to object to. The drug amount is clearly supported by the record and counsel's decision not to press for further documentation of drug amounts could only have prejudiced petitioner. As such, forgoing the extra step of obtaining more testing that would not help petitioner's case, and that might actually produce more evidence implicating him, a strategic decision which was not unreasonable under the circumstances. A strategic decision generally will not be second-guessed. Wiggins v. Corcoran, 288 F.2d 629, 640 (4th Circ. 2002).

Petitioner entered into the plea agreement in order to receive the protection of the reciprocal benefits it offered. The fact that the petitioner now thinks counsel should have made other meritless challenges to the evidence is not evidence of ineffectiveness. Even if it were, the petitioner offers nothing more than conjecture and speculation to show that he was prejudiced by counsel's alleged failures. Accordingly, this ground has no merit and should be denied.

Regarding petitioner's Ground 6(b)8 claim that counsel failed to challenge the Government's breach of the plea agreement, since there was no breach, counsel cannot be found ineffective for not raising the issue. "Counsel's failure to file a meritless motion does not constitute ineffective assistance of counsel. See United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994); Almon v. United States, 302 F. Supp. 2d 575, 586 (D.S.C. 2004).

Petitioner's claims of ineffective assistance have no support in fact or law. He has failed in his burden under Strickland. Nor can he sustain his burden under Hill v. Lockhart, *supra,* since he has not claimed that had only counsel not made the alleged errors, he would not have pled guilty and would have gone to trial. Relief should be denied.

**Ground Six (c): Whether Counsel was Ineffective at Sentencing, for Failing to Protect Petitioner's Rights Regarding the Plea Agreement by Arguing for Downward Departures and Challenging Drug Amounts.**

Here, petitioner contends that counsel's performance at the sentencing hearing was substandard, because he did not protect petitioner's rights regarding the plea agreement by arguing for downward departure and challenging the "enhancement" in the drug weight. Petitioner argues that "because the total meth weight was 1340 some odd grams and the rest of the weight was from a pound of marijuana that was found giveing [sic] a total of 1768 grams. in [sic] which anything over 1500 grams is another upward departure on the US [sic] sentencing guideline scale." (Dkt.# 146 at 7).

Petitioner also contends that counsel was unaware of the Government's supplemental sentencing memorandum him until the day of the sentencing hearing and was unprepared as a result. Further, he alleges, despite the Government's contention that counsel was served with the supplemental memorandum on October 31, 2007, the supplemental memorandum was never filed until April 24, 2008, the day of sentencing. He alleges that counsel never sent him a copy and never went over it with him and attaches an affidavit to this effect. (Dkt.# 135 at 10). He argues that the argues that the Court used the information in the memorandum to give him "the harshest sentence possible." (Id. at 7).

Contrary to the petitioner's claim that his attorney did not argue for downward departures of challenge the drug amounts affecting his sentence, the sentencing hearing transcript clearly reflects that counsel did, in fact, file nine objections to the PSR, and vigorously argued them at sentencing, including one for a downward departure for acceptance of responsibility and another for downward departure in consideration of the "amazing" substantial assistance petitioner provided in imposing a sentence at the lowest end of the Guideline. (Dkt.# 122 at 11 - 13). Despite counsel's efforts, the Court found that while

petitioner had voluntarily and timely[30] entered his plea, it could not ignore his post-guilty-plea misconduct, as it was inconsistent with acceptance of responsibility. Accordingly, there is no basis for finding any deficiency on the part of counsel. This claim lacks merit and should be denied.

Regarding petitioner's allegation that counsel was ineffective for not challenging the drug amount relevant conduct at the sentencing hearing, petitioner's plea agreement contained this paragraph, reproduced here in pertinent part:

> 14. Pursuant to Sections 6B1.4, 1B1.3 and 2D1.1 [Application Note 12] of the Guidelines, the parties hereby stipulate and agree to the following facts: In early November, 2005, two individuals known to the United States Attorney, traveled from Florida to Tucker County, West Virginia, as couriers for a Florida methamphetamine distribution organization, which organization had previously "fronted" more than one and a half kilograms (1.5 kg) but less than five (5) kilograms of a substance containing methamphetamine, to the defendant, RANDY L. ROHRBAUGH, for distribution. On November 8 2005, the two couriers were arrested near Canaan Valley, Tucker County, West Virginia, and approximately three and a half pounds (3 ½ lbs) of a substance containing methamphetamine was found in their vehicle. This seized 3 ½ pounds of methamphetamine was a portion of the mentioned previously "fronted" methamphetamine, and it had been placed in the couriers' vehicle by the defendant, RANDY L. ROHRBAUGH . . . **The total drug relevant conduct of the defendant is more than one and a half kilograms (1.5 kg) but less than five (5) kilograms of a substance containing methamphetamine**. . .

(Dkt.# 6 at 6). *(emphasis added).*

At his plea hearing, after the entire plea agreement, including paragraph 14, *supra,* was read aloud or summarized into the record by the Assistant U.S. Attorney, this exchange was had:

---

[30] Despite petitioner's claim in his reply to the Government's supplemental response, that he was entitled to the two-level reduction for acceptance of responsibility and an additional one level for timely acceptance because he "*was not informed he was being charged til a week before he signed the plea*," the final draft of the plea agreement was extended on June 2, 2006, and petitioner was given until July 13, 2006 to sign it. He waited the full six weeks the offer remained open, finally signing it on July 13, 2006. (Dkt.# 6 at 1). A cursory review of the record reveals that petitioner was well aware that he was going to be charged, months before the plea agreement was offered in early June 2006. See ¶44 of the PRS: "[r]egarding Randy Rohrbaugh, acceptance of responsibility is a little more complicated. He did not plead guilty until several months later - - after the truth unraveled. Only a few days after being released, he was involved in a domestic situation . . . smashing the . . . window of a vehicle . . . driven by his girlfriend. His release was revoked. A few days later . . . the parties appeared by the court with a tailored plan for his rerelease, which was accepted by the court. Following this release, Randy Rohrbaugh began seriously performing work as a confidential informant. His work came to an abrupt hault, [sic] when he was caught in the bathroom of the Elkins federal building cheating on a urine drug screen, by using a "whizinator." (Dkt.# 74 at 10).

THE COURT: . . . As indicated by Mr. Warner in his summarization, the parties have stipulated that the total drug - - relevant drug conduct of the Defendant is "more than one and a half kilograms (1.5 kg) but less than five (5) kilograms of a substance containing methamphetamine." Although expressly set forth in Paragraph 16 of the plea agreement, the Court must advise you, Mr. Rohrbaugh, that the Court is not bound by the stipulation and, should the Court not accept this stipulation, you would not have the right to withdraw your guilty plea. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Rohrbaugh, do you understand and agree with the terms contained in the plea agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has anything further been agreed to, either orally or in writing, that is not contained in the plea agreement?

THE DEFENDANT: No.

(Dkt.# 121 at 24 - 25).

Petitioner signed each and every page of the plea agreement on July 13, 2006, including the page on which paragraph 14 containing the stipulation of total drug relevant conduct was contained. He was not sentenced until April 24, 2008, almost nine months later. Even then, although through counsel, petitioner made nine separate objections to the PSR, none challenged his total drug relevant conduct. During the sentencing hearing, the Court set forth the drug relevant conduct at issue:

THE COURT: All right, thank you . . . the Court deferred its decision to accept or reject the plea agreement, the nonbinding recommendations, and the stipulations until the Court had an opportunity to consider the Presentence Report. It appears that the report takes into account all relevant conduct attributable to the defendant . . . And under Guideline §§ 2D1.1, the base offense level for more than 1.5 kilograms of methamphetamine, but less than 5 kilograms, as stipulated in the plea agreement, is 34 . . .

(Dkt.# 122 at 3).

Petitioner made no protest and offered no objection when the Court referenced the amount of drugs at issue. Petitioner had already stipulated and agreed to the total drug relevant conduct in his plea

agreement, one year and almost 9 ½ months earlier. Petitioner's claim that counsel was ineffective at the sentencing hearing for failing to challenge what was already stipulated to has no merit. That an experienced defense attorney would, at sentencing, challenge what had already stipulated and agreed to in a plea agreement, defies logic. At sentencing, counsel had no basis for objecting to what petitioner had already stipulated to; thus he cannot be found ineffective for failing to do so. Petitioner's two hundred and twenty month sentence is a result of his own criminal actions, not because of anything that counsel did or failed to do.

"Representations of defendant, his lawyer, and prosecutor at plea hearing with respect to lack of promises influencing guilty plea constitute a formidable barrier in any subsequent collateral proceedings, since strong solemn declarations in open court carry a strong presumption of verity, and subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." Blackledge v. Allison, 431 U.S. 63, 73-74 (1974). Therefore, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992).

Petitioner has neither demonstrated that counsel's performance fell below an objective standard of reasonableness, or that he was prejudiced by anything counsel did or failed to do. Nor has he shown that had counsel done anything otherwise, that the result of the proceeding would have been any different. Because petitioner fails to make the requisite showing, or to demonstrate that a fundamental miscarriage of justice would occur if his claims were not considered on the merits, he cannot prove either prong of the Strickland analysis and has failed to prove his claim by the preponderance of evidence required. Further, he has not claimed that had counsel not made his alleged errors, he would not have pled guilty but would have insisted on going to trial, so he cannot sustain his burden under Hill v.

Lockhart, 474 U.S. 52 (1985).  This claim should be denied.

As for petitioner's contention that counsel was unprepared for sentencing because he either did not receive a copy of the Government's supplemental sentencing memorandum, or, alternatively, he received it but did not share it with petitioner prior to the hearing, this claim has no merit.  The certificate of service on the Government's supplemental memorandum reflects that it was served "via email, on this Halloween, the 31st day of October, 2007[,]"  (Dkt.# 73 at 5) almost six months before sentencing.  As with other documents prepared for sentencing, like the PSR (disclosed to counsel July 30, 2007); the Government's original sentencing memorandum (served September 20, 2007); sentencing memoranda are served well in advance of the hearing but not filed and made part of the record until the sentencing hearing.  Counsel clearly was prepared for sentencing, as he filed nine objections to the PSR and vigorously argued them all on petitioner's behalf.  Further, counsel gave a long and impassioned allocution in petitioner's defense, attempting to rebut the substantial evidence of petitioner's duplicity and misconduct presented in the Government's case, in hopes gaining the Court's leniency in sentencing him.  Petitioner's implication that he was blindsided at sentencing by the information about his own misconduct while on post-plea bond lacks merit.  He had been re-incarcerated as a result of the behavior; he could hardly be unaware that it would have consequences at sentencing.  Furthermore, petitioner did not receive "the harshest sentence possible."  The record reveals that petitioner was only sentenced to 220 months imprisonment, the middle of his guideline range of 188 - 235 months.  The sentence he received was a direct result of his own decisions to attempt to deceive the Court and violate his bond in a multitude of ways.  Petitioner has neither proved that counsel was ineffective at sentencing, nor that he was prejudiced.   This claim has no merit and relief should be denied.

**Ground Six (d): Whether Counsel was Ineffective for Not Filing a Notice of Appeal on Behalf of Petitioner.**

Petitioner contends that counsel was ineffective for his "failure to note a timely requested appeal

by the petitioner." (Dkt.# 109 at 9). He asserts that counsel told him he "could not appeal because his plea agreement stated he could not." (Id.). Petitioner contends that despite the waiver of his appellate rights, counsel should have filed an appeal anyway, based on the Government's breach of the plea agreement. He alleges that when he "learned he could appeal because of breach [sic] by government, counsel advised him be [sic] couldn't because government and court stayed within the guedelines [sic]." (Dkt.# 107 at 8). Petitioner claims that "after sentencing, counsel led the petitioner on like he was going to help him. Told him to send a letter stating what he needed and what he wanted to do. Counsel ignored several of petitioner's letters[31] and in a phone conversation almost 5 months later, told defendant that he was no longer his problem." (Dkt.# 109 at 10).

The Government, even after being directed to file a supplemental response to specifically address this issue, merely reiterated its position that petitioner was not entitled to appeal because he had waived his appellate rights, incident to his plea agreement.

On November 8, 2010, despite prior warning by the Court that no further amendments or supplements to his petition would be permitted, petitioner filed yet another motion to supplement. (Dkt.# 167). Attached to this motion were four "Affidavit(s) in Support of Supplement." One was from petitioner, one was from an individual named RoseAnn Carr, and there was one each from a Marvin O. Rohrbaugh and a Debora A. Rohrbaugh.[32] The affidavits by the Rohrbaugh's are notarized; the ones by petitioner and RoseAnne Carr are not. Carr's affidavit claims that

> . . . On a few different occasions petitioner Randy L. Rohrbaugh had me to call [sic] his attorney, Jeff Freeman. A couple of the conversations pertained to whether Freeman was going to appeal Rohrbaugh's case. He said he would, just to have Randy contact him. Statement by RoseAnne Carr[.]

---

[31] Petitioner did not attach copies of any the letters that he alleges that he sent to counsel that were ignored.

[32] By inference from information contained within petitioner's affidavit, these individuals appear to be the mother of his children and his parents.

Dkt.# 167-1 at 1.

Petitioner's affidavit states

. . . When I was sentenced my lawyer turned to me and said he was sorry that [sic] he expected it to turn out differently. Because we had talked at the jail beforhand [sic] and he said he expected me to get around 135 months. I told him I wanted to appeal and he told me that we would, just keep in touch with him and we would do whatever I wanted to do.

I called him from the jail and was told he wasn't in several times. Impatient as I am I had my childrens [sic] mother call on one ocassion [sic] and she got hold of him and she said that everything was ok we were going to appeal. I had my mother to call [sic] and he told her just to have me send him a letter of what I wanted him to do. After I got to prison my counsler [sic] allowed me a **call to my attorney and I asked him why he hadn't responded to *my letter*** that I thought he was my attorney. He said as far as he was concerned as soon as I was sentenced he was finished with my case. I SWEAR UNDER THE PENALTY OF PERJURY THAT THE FOLLOWING STATEMENT [sic] IS TRUE AND CORRECT. Randy L. Rohrbaugh

Dkt.# 167-1 at 2. (emphasis added).

The affidavit from Melvin O. Rohrbaugh on the issue states:

. . . One day Randy ask [sic] his mother to call his lawyer, Freeman. She wanted me to listen so I could tell Randy what he said in case she wasn't there when he called. When she called and told him Randy wanted to appeal, he said he would file the petition, but after that he couldn't do anything more, because he was taking the Assistant prosecutors [sic] job in Marion County. I SWEAR UNDER THE PENALTY OF PERJURY THAT THE FOLLOWING [sic] STATEMENT IS TRUE AND CORRECT. Statement by Marvin O. Rohrbaugh

Dkt.# 167-1 at 3.

Debora A. Rohrbaugh's affidavit claims:

. . . After Randy L. Rohrbaugh (petitioner) was sentenced, he ask [sic] me to make some phone calls for him. One in particauar [sic] to his lawyer, Jeff Freeman, telling him that petitioner wanted to appeal [sic] I had Marvin Rohrbaugh listen on the other line so that he could tell Randy what was said in case I wasn''t [sic] home when he called. Freeman said to have Randy send him a letter telling him what he wanted to do, but after he filed the petition he would no longer represent him because he was going to become assistant prosecutor in Marion County. I SWEAR UNDER THE PENALTY OF PERJURY THAT THE FOLLOWING [sic] STATEMENT IS TRUE AND CORRECT. Statement by Debora A. Rohrbaugh

Dkt.# 167-1 at 4.

In reviewing the affidavits, it is apparent that the account of the events in petitioner's new affidavit *supra,* differs from his prior claim, made in his original § 2255 motion, that counsel "[t]old him to send a letter stating what he needed and what he wanted to do. Counsel ignored ***several of petitioner's letters*** and in a phone conversation almost 5 months later, told defendant that he was no longer his problem." (Dkt.# 107 at 8). Petitioner now only alleges that he sent "a" letter, and previously he alleged that he sent "several." [33] Of note, the record reveals that at sentencing, even after the Court advised petitioner of his appellate rights and the mechanism for filing an appeal in *forma pauperis,* petitioner did not avail himself of the opportunity offered by the Court to have the Clerk assist him or his counsel in filing a notice of appeal. (Dkt.# 122 at 18 - 19).

To demonstrate a Sixth Amendment violation by virtue of counsel's failure to file an appeal, petitioner must first prove that counsel was ineffective, and then, that but for counsel's ineffectiveness, an appeal would have been filed. Roe v. Flores-Ortega, 528 U.S. 470 (2000). "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. at 478.

The Fourth Circuit Court of Appeals has held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). In rendering this decision, the Court opined:

---

[33] Of note, petitioner has not provided copies of *any* letters he alleges that he wrote to counsel regarding an appeal.

> Persons convicted in federal district courts have a right to a direct appeal. <u>Coppedge v. United States</u>, 369 U.S. 438, 82 S.Ct.917, 8 L.E.2d 21 (1962). In addition, the Sixth Amendment right to counsel extends to the direct appeal, <u>Douglas v. California</u>, 372 U.S. 353, 83 S.Ct. 917, 8 L.Ed.2d 811 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious. <u>Anders v. California</u>, 386 U.S.738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

<u>Id</u>. at 41.

Further, the Fourth Circuit maintains that counsel must file an appeal if instructed to, even if appealing would seem contradictory to client's best interest:

> [A]n attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests. In this case, although there is a real possibility that [defendant] will face a higher sentence or even charges related to the [ ] incident if he decides to appeal, his right to appeal cannot b

<u>United States v. Poindexter</u>, 492 F.3d at 273.

As held in <u>United States v. Poindexter</u>, 492 F.3d 263, 273 (4th Cir. 2007) an evidentiary hearing is required in such cases to determine whether the petitioner unequivocally instructed his attorney to file a notice of appeal or, if his attorney was not so instructed, the court will determine if petitioner met his burden of showing that: (1) his attorney had a duty to consult under <u>Roe v. Flores-Ortega</u>, 528 U.S. 470 (2000); (2) his attorney failed to fulfill his consultation obligations; and (3) he was prejudiced by his attorney's failure to fulfill these obligations.

Accordingly, because the petitioner's motion(s) and the Government's response do not conclusively establish that petitioner is entitled to no relief, I find that an evidentiary hearing is necessary to determine whether petitioner requested that his attorney file an appeal and whether counsel ignored or refused such instructions. <u>See</u> 28 U.S.C. § 2255 (providing in pertinent part that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing

thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); See also United States v. Witherspoon, 231 F.3d 923 (4th Cir. 2000).

An evidentiary hearing, **solely on the issue of whether petitioner instructed his counsel to file an appeal** shall be held at a time to be set by the United States Magistrate Judge David J. Joel after the counsel has been appointed for the Petitioner.

Petitioner shall immediately be transported to Martinsburg, West Virginia for this hearing. The Fedearl Public Defenders office shall appoint counsel to represent the Defendant in this evidentiary hearing only. It is so **ORDERED.**

## IV. __Recommendation__

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING and dismissing with prejudice** the petitioner's § 2255 motion (Dkt.# 107), his first amended § 2255 motion (Dkt.# 146), and his second amended § 2255 motion (Dkt.# 153).

Further, the undersigned recommends that

1) Petitioner's *pro se* Motion to Remand Case to District Court for Evidentiary Hearing for Substantial Assistance (Dkt.# 110);

2) Petitioner's *pro se* Motion for Appeal by Permission (Dkt.# 111);

3) the Government's Motion to Dismiss 2255 Petition (Dkt.# 124);

4) Petitioner's *pro se* Memorandum and Support [sic] of Motion to Obtain Documents of Motion to Obtain Transcripts and Motion for Enlargement of Time to File Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Costody [sic] and Affidavit of Indigency (Dkt.# 142); **all be DENIED** as moot; and that

5) Petitioner's motion to supplement (Dkt.# 167) be **GRANTED** and deemed already supplemented.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: November 15, 2010

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE